IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA

v.

JAWUAN D. BROWN,

Defendant.

Criminal Action Number 3:09cr204

## MEMORANDUM OPINION

This matter is before the Court on the defendant's motion to suppress.  For the reasons set forth herein, the Court will deny the motion.

## I.  FACTS

On the afternoon of June 9, 2009, Richmond Police Detective and ATF Task Force Officer Janet Mills was patrolling Northside Richmond with ATF Special Agent James Panos.  At around 2:30 p.m., Officer Mills, a seven-year veteran in law enforcement, received a call from a concerned citizen who lived in the area and regularly called her about his observations in that area.  The citizen reported group activity he believed to be drug-dealing at the corner of 4th Avenue and Spruce Street.

The corner of 4th and Spruce is a well-known open-air drug market, and since November 2008, it has been the subject of a joint ATF-Richmond Police controlled-buy drug operation.  Officer Mills and Agent Panos had, themselves, participated in this operation which had successfully made approximately seventeen controlled-buys of crack cocaine or heroin during daylight hours prior to June 9, 2009.  Officer Mills also knew the area for its violent criminal activity, including a 2009 robbery and shooting incident and well over a dozen drugs arrests, at least two of which involved

charges of resisting arrest and assaults of police officers.  Additionally, Officer Mills and Agent Panos were present in an alley just off of the 4th and Spruce intersection at around 2:30 p.m. or 3:00 p.m. in April 2009 when gunfire erupted, ultimately ending in a homicide and the arrest of two armed men.  Further, Officer Mills knew of approximately twelve firearms that had been recovered in the 4th and Spruce area within a year prior to June 9, 2009, and she understood generally that the street-level drug dealers in the area usually kept weapons on their person or within a close proximity to their transactions.

In his call on June 9, 2009, the concerned citizen described to Officer Mills one of the individuals at the corner of 4th and Spruce as male, young, and shirtless.  He indicated that this particular individual would approach one of the others in the group and, after appearing to have received something from the other man, would get into an automobile that had driven up, only to get right back out again and repeat the process.  Officer Mills understood this type of conduct to be consistent with street-level drug dealing.

Within five minutes of receiving the phone call, Officer Mills and Agent Panos arrived at the corner of 4th and Spruce where they saw around twelve individuals.  These individuals were primarily young black males, and Officer Mills could not recall how many were shirtless.  As Mills and Panos pulled up, the group of individuals began to walk away.  Agent Panos followed some of the males in one direction, and Officer Mills observed the defendant, Jawuan Brown, a 23-year-old male, turn and walk away in a different direction.  Officer Mills could not recall whether Mr. Brown was wearing a shirt.

Officer Mills and Agent Panos were both well-acquainted with Mr. Brown and knew him by name.  They knew from a confidential informant that, about six months prior, Brown had had

2

firearms stolen from him at the intersection of 4th Avenue and Spruce Street.  They knew from two

independent informants that Brown was actively dealing cocaine and heroin and had, in fact, told

an informant during a controlled buy in December 2008 that he could sell him heroin. They also

knew that Brown's two brothers, with whom he regularly associated at the corner of 4th and Spruce,

had sold drugs to informants approximately seven times since November 2008 at the intersection.

Finally, they knew that a vehicle a Richmond detective had seen Mr. Brown lingering around just

outside of his grandmother's residence on 4th Avenue was discovered to have contained a large

amount of currency, drugs, and firearms.

Having recognized Mr. Brown as he turned and walked away, Officer Mills then observed

Mr. Brown, from a distance of approximately ten feet, turn his right side away from the authorities,

whereupon he made a furtive movement with his right arm.  Though Officer Mills could not see

exactly what Mr. Brown did with his right hand, she saw his right shoulder and bent elbow move

up and then down, a motion that she believed was consistent with the defendant concealing

something inside of his waistband.  Believing that Mr. Brown may have just placed a weapon in his

waistband, and recognizing that Agent Panos was by then twenty-five feet away or more, Officer

Mills called out Mr. Brown's first name and walked toward him.  When Mr. Brown turned around,

Officer Mills placed him in handcuffs.  Officer Mills then saw a small bulge in Mr. Brown's

waistband area on his right side, and she asked him if he had his identification on him.  As Mr.

Brown reached to pull his identification out, Officer Mills took it from his back pocket, and Mr.

Brown then said, "You can search me; it is just marijuana."  Officer Mills then conducted a

protective pat down of Mr. Brown's waistband area to determine if the small bulge was a weapon.[1]

The pat down revealed that the bulge was actually a bag containing an unknown quantity of marijuana.  Officer Mills then continued her search and discovered additional evidence in Mr. Brown's pockets: over $1,300 in currency and a bag of what Officer Mills believed to be crack cocaine.  The defendant seeks to suppress all of this evidence, along with additional evidence discovered later by means unchallenged, but which the defendant asserts would constitute fruit of the poisonous tree.

## II. ANALYSIS

In support of his motion to suppress, the defendant challenges the investigatory detention in three ways.  First, he argues Officer Mills lacked constitutional authority to make the initial stop.  Second, he argues that, even if the initial stop was justified, the use of handcuffs during the stop was unlawful.  Third, he argues that, even if the use of handcuffs was justified, the ensuing pat down was unlawful.  The Court denies the defendant's motion to suppress finding no constitutional violation in any of the defendant's three challenged areas.  The Court finds that the evidence should not be suppressed because Officer Mills had a reasonable suspicion based on articulable facts for stopping

---

[1]Officer Mills's testimony at Mr. Brown's detention hearing seems to indicate that the pat down took place prior to her request for identification and Mr. Brown's statement about possessing marijuana.  Her testimony at the motion to suppress hearing and the language in her original affidavit, however, indicate that the sequence was as described here, where the pat down occurred *after* the request for identification and Mr. Brown's statement about possessing marijuana.  The Court in no way construes this apparent inconsistency as lessening Officer Mills's credibility, but notes the discrepancy for the sake of completeness.  Regardless, the Court would deny the defendant's motion to suppress under either set of circumstances because Officer Mills, as explained in the discussion below, already reasonably believed that the defendant was armed and dangerous when she placed the defendant in handcuffs.  Additionally, under both scenarios, Officer Mills had already seen the bulge in the defendant's waistband, which she reasonably believed was a weapon the defendant had just concealed, thus further suggesting he was armed and dangerous.

the defendant, and she reasonably believed that the defendant was armed and dangerous before placing him in handcuffs and conducting a protective pat down search.

### A. Officer Mills's initial investigatory stop of Mr. Brown was lawful.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has long made clear that "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The officer must, however, be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27. The Fourth Amendment, therefore, requires "some minimal level of objective justification to validate the detention." *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 217 (1984). Yet "[t]he concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *Sokolow*, 490 U.S. at 7 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Therefore, in evaluating the validity of an investigatory detention, the Court must consider "the totality of the circumstances – the whole picture." *United States v. Cortez*, 449 U.S. 411, 417 (1981).

Officer Mills knew Mr. Brown from his prior involvement with crime. She knew Mr. Brown had possessed firearms at the intersection of 4th and Spruce and that those firearms had been stolen from him there about six months prior. She also knew that Mr. Brown was actively dealing cocaine and heroin in that particular area and that he was likely associated with the large amounts of currency, drugs, and firearms discovered in a vehicle parked outside of his grandmother's residence.

While an officer's knowledge of an individual's prior criminal involvement "is not, standing alone, sufficient to create reasonable suspicion[,] . . . an officer can couple knowledge of prior criminal involvement with more concrete factors in reaching a reasonable suspicion of current criminal activity." *United States v. Sprinkle*, 106 F.3d 613 (4th Cir. 1997).

Officer Mills coupled her knowledge of Mr. Brown's prior criminal involvement with at least four other factors creating a reasonable suspicion of current criminal activity and the need for protective measures. First, Officer Mills had received a phone call from a reliable citizen reporting suspicious group activity. The caller described conduct that Officer Mills understood to be street-level drug dealing, and Mr. Brown, a young male, fell generally within the caller's description of the individual conducting the transactions. "[A]n informant's tip can provide the justification for a *Terry* stop even if the informant's reliability is unknown." *United States v. Perrin*, 45 F.3d 869, 872 (4th Cir. 1995). Therefore, here, where the caller had previously and reliably aided law enforcement with respect to criminal activity in the subject area, Officer Mills was certainly justified in using the caller's tip as one informing factor.

Second, Officer Mills knew the intersection of 4th Avenue and Spruce Street to be a violent open-air drug market. She knew numerous firearms had been recovered in the area; that officers had been assaulted while making arrests in the area; that a robbery and shooting incident had occurred in the area that year; and that she had been present during the eruption of daytime gunfire in the area that resulted in a homicide just two months prior. She also knew that the controlled-buy drug operation in which she had participated had successfully made at least seventeen controlled-buys of cocaine or heroin at the intersection, and that the operation was ongoing. "While the defendant's mere presence in a high crime area is not by itself enough to raise reasonable suspicion, an area's

propensity toward criminal activity is something that an officer may consider." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993). Therefore, Officer Mills lawfully considered the location's notoriety as one informing factor.

Third, Officer Mills observed Mr. Brown turn and walk away both from the group gathered at the intersection and from Officer Mills and Agent Panos. An officer may construe an individual's "turning his back and walking away" as an attempt to evade police, and "[e]vasive conduct, although stopping short of headlong flight, may inform an officer's appraisal of a streetcorner encounter." *Id.* Turning and walking away to evade law enforcement can be particularly informative in a known drug market where sophisticated dealers know that headlong flight is extremely suspicion-arousing, and, instead, often walk away to try to "fly" under the radar. As such, Officer Mills lawfully construed Mr. Brown's turning his back and walking away as evasive conduct and considered this as one informing factor.

Fourth, Officer Mills saw Mr. Brown make two consecutive furtive movements. Mr. Brown intentionally turned his right side away from the authorities; then, with that side out of the view of the authorities, Mr. Brown made a motion with his right arm suggestive of concealing something inside of his waistband with his right hand. Furtive movement can inform an officer, and even though Officer Mills could not see a weapon go into Mr. Brown's waistband, she is not required in the absence of probable cause "simply to 'shrug [her] shoulders and allow a crime to occur.'" *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 145 (1972)). Therefore, Officer Mills lawfully considered Mr. Brown's movements as an informing factor.

"Reasonable suspicion is a commonsensical proposition[,] . . . [and c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the

street." *Id.*  In creating her reasonable, articulable suspicion that Mr. Brown was involved in criminal activity, Officer Mills lawfully considered all of the factors described above as further informed by her seven years of practical experience serving in law enforcement.  Therefore, considering the totality of the circumstances, the Court finds that a reasonable, articulable suspicion did exist to make the initial investigatory stop in satisfaction of the Fourth Amendment.

### B.  Officer Mills's use of handcuffs was lawful.

With respect to the use of handcuffs in conducting a *Terry* stop, the Fourth Circuit recognizes that "[a] brief but complete restriction of liberty is valid under *Terry*."  *United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir. 1987).  Therefore, complete liberty restrictions, such as "drawing weapons, *handcuffing a suspect*, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest."  *United States v. Leshuk*, 65 F.3d 1105, 1109-10 (4th Cir. 1995) (emphasis added).  Instead, "in conducting *Terry* stops investigating officers may take steps reasonably necessary to maintain the status quo and to protect their safety."  *United States v. Sinclair*, 983 F.2d 598, 602 (4th Cir. 1993) (citing *United States v. Hensley*, 469 U.S. 221, 235 (1985)).  In determining what steps are "reasonably necessary," the officer is informed by her past experiences and present knowledge of the situation, and "experience with drug traffickers might lead law enforcement officials to fear bodily harm in conducting a *Terry* stop."  *Id.* at 603.  Thus, where an officer "reasonably suspect[s] that [the suspect is] armed and dangerous," the officer is justified in using handcuffs as a reasonably necessary precaution during an investigatory stop.  *United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007).

8

As explained above, Officer Mills received a phone call alerting her to suspected drug dealing.  She knew Mr. Brown to be involved with serious criminal activity.  She knew the prolific and violent criminal propensities of the 4th Avenue/Spruce Street intersection.  She watched Mr. Brown intentionally turn and walk away from law enforcement, and she observed Mr. Brown make two furtive movements suggestive of concealing a weapon.  Taking into consideration all of these factors, Officer Mills reasonably believed that Mr. Brown was armed and dangerous, and the use of handcuffs was reasonably necessary to maintain the status quo and protect Officer Mills from potential bodily harm.  Therefore, the Court finds that the use of handcuffs during the *Terry* stop was justified in this case.

### C.  Officer Mills's protective pat down search was lawful.

An officer making a lawful investigatory stop may also protect herself "by conducting a search for concealed weapons whenever '[s]he has reason to believe that the suspect is armed and dangerous.'"  *Moore*, 817 F.2d at 1107 (quoting *Adams*, 407 U.S. at 146).  Officers may conduct such searches because "[a] compulsory interval of questioning between the stop and frisk leaves law enforcement officers at risk."  *Id.*  Indeed, "'[t]here is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet.'"  *Id.* at 1108 (quoting *Terry*, 392 U.S. at 33 (Harlan, J., concurring)).  The officer's reasonable belief that the suspect is armed and dangerous "may derive as much from h[er] experience in similar cases as from h[er] precise knowledge of the dangerous propensities of the suspect at hand."  *Sinclair*, 983 F.2d at 603.  Officer Mills, a law enforcement officer with significant knowledge of, and experience in, the violent 4th Avenue/Spruce Street area, acting in response to a reliable informant's tip and taking into account her accumulated knowledge

of both the area and Mr. Brown himself, along with her present observations of Mr. Brown's movements, reasonably believed that Mr. Brown was armed and dangerous.  Moreover, the intrusion was limited, as Officer Mills only quickly patted down the outside of Mr. Brown's waistband area. Further, once she lawfully discovered the small, oval bulge that ended up being marijuana, Officer Mills had probable cause to continue her search of Mr. Brown.  Therefore, Officer Mills responded as the Constitution provides, and the marijuana and all ensuing additional evidence were discovered lawfully within the parameters of the Fourth Amendment.

### III.  CONCLUSION

For the foregoing reasons, the Court finds the defendant's arguments without merit. Accordingly, the Court will deny the defendant's motion to suppress.

An appropriate Order shall issue.


September 14, 2009                                          /s/
DATE                              RICHARD L. WILLIAMS
                                  SENIOR UNITED STATES DISTRICT JUDGE